# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, J. WILLIAM BOOKWALTER, III, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 12-145 |
| v. | ) ) | Judge Cathy Bissoon |
| UPMC, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## ORDER

Defendants' Motion to Dismiss (Doc. 99)[1] will be granted. In support of this ruling, the Court incorporates by reference its analyses in the Order dated June 21, 2017 (Doc. 95), as well as the analyses in Defendants' current Motion-papers (Docs. 100 & 108).

In the June 21st Order, the Court expressed "strong doubts" regarding Plaintiffs' ability to overcome-by-amendment the numerous pleading deficiencies identified therein. *See* Doc. 95 at 2. Defense counsel is correct that Plaintiffs did not comply with the Court's instructions regarding amendment, *see* Doc. 100 at 1; but, in fairness, it now seems clear that they were directed to do that which could not be done. Indeed, had Plaintiffs' request to amend not been so

---

[1] At the onset, the Court dispenses with the notion that Defendants should be faulted, or owe an apology, for not adhering to the undersigned's "meet and confer" requirement as-relates to motions under Rule 12(b)(6). *See generally* Practices & Procedures (http://www.pawd.uscourts.gov/sites/pawd/files/JudgeBissoon-Chamber-Rules-Revised-20170214.pdf) at § II.A (requiring parties, in advance of motions-practice, to discuss whether pleading defects may be cured by amendment). The requirement does not "fit" the current procedural posture (*i.e.*, Plaintiffs being afforded one last chance to amend their pleadings, following the Court's grant of a prior Motion to Dismiss based on detailed legal analyses; after which it was almost a foregone conclusion that Defendants again would test the legal-sufficiency of the amended claims).

vociferously stated, the Court might well have thought to allow, in the alternative, a second path: that Plaintiffs be permitted to stand on their pleadings and immediately proceed to appellate review. *See generally* S.B. v. KinderCare Learning Ctrs., 815 F.3d 150, 152 n.1 (3d Cir. 2016) (contemplating same).

In the end, the outcome remains unchanged. Plaintiffs by-now have abandoned all of their claims save those under the Stark Law. Defendants have made compelling arguments that Plaintiffs' current allegations do not plausibly identify a Stark-implicating compensation agreement, *see* Doc. 100 at 7-9, and the Court adopts their arguments and conclusions. Even were the Court to assume the contrary, Plaintiffs' underlying premise – that targeted-physicians conducted medically unnecessary, or unnecessarily complex, procedures – persists. *See, e.g.*, 2d Am. Compl. (Doc. 98) at ¶¶ 67, 82, 188-212. Plaintiffs' newly-amended pleadings offer no greater specificity, and they still fail to sufficiently allege "particular details of a scheme to submit false claims[,] paired with reliable indicia . . . lead[ing] to a strong inference" that false claims actually were submitted. *See* Doc. 95 at 3 (citing and quoting binding Third Circuit authority).

In the face of this seemingly inevitable conclusion, Plaintiffs attempt to side-step it by suggesting that the wRVU-based compensation system, either generally or as applied by Defendants, constituted a *per se* violation of the Stark Law. The Court joins Defendants in rejecting this contention. There is no support for it, in the law or otherwise, and were such allegations enough, one can only imagine the proliferation of *qui-tam* lawsuits that would result. *See* Doc. 108 at 2-3 & n.2.[2]

---

[2] Tellingly, the case decisions cited by Plaintiffs' counsel are facially distinguishable. *See, e.g.*, Doc. 103 at 16 (citing cases in which healthcare systems allegedly offered salaries or bonuses well in excess of fair-market-value, essentially taking a loss on those specific services in

Perhaps the clearest "shorthand" explanation for why Plaintiffs' claims remain deficient is one emphasized in the Court's prior Order: Plaintiffs have not, and cannot, distinguish the presumably-lawful compensation/referral arrangements between the Relator-physician(s) and Defendant(s), and those of the purportedly malfeasant physicians. The only plausible distinction is Plaintiffs' contention – whether by express averment or through unspoken implication – that certain "bad actors" performed unnecessary or unnecessarily-complex medical procedures and the Relator(s) did not.[3]

For all of the reasons above, including those incorporated by reference herein and in the June 21st Order, Defendants' Motion to Dismiss (**Doc. 99**) is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

March 27, 2018                                              s\Cathy Bissoon
                                                            Cathy Bissoon
                                                            United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

exchange for windfalls resulting from increased referrals and "downstream income"). Defendants' wRVU-based compensation model is, on its face, productivity-related; and the "special sauce" needed to make Plaintiffs' claims plausible – sufficiently-specific allegations regarding a lack of medical necessity – remains conspicuously absent.

[3] In contravention of the Court's June 21st Order, a swath of the Second Amended Complaint brazenly reasserts the same allegations regarding lack-of-medical-necessity. *See* Doc. 98 at ¶¶ 188-212 (subsection titled, "[Physicians p]erforming more complex procedures than necessary [to] artificially inflate wRVUs"). Other instances have been omitted. *See* Doc. 100-1 (redlined-comparison of First and Second Amended Complaints, supplied by Defendants' counsel). The Court's June 21st Order is the law of the case, and Plaintiffs cannot evade it merely by extracting some or all references to "medical necessity."