IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 12-145 |
| v. | ) ) | Judge Cathy Bissoon |
| UPMC, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

Defendants' Motion for summary judgment (*see* Doc. 206) will be denied.[1] The parties' cross-Motions to strike each other's expert opinions regarding fair market value (*see* Docs. 198, 209 & 219) – the only expert opinions implicated by the Court's summary judgment analyses – also will be denied. Opinions regarding fair market value ("FMV") aside, the parties' cross Motions to strike each other's experts (*see* Docs. 193, 194, 196, 198, 200, 209, 213 & 219) will be denied, without prejudice. Finally, Plaintiffs' Motion (Doc. 266) to continue the seal will be granted, and Defendants' Motions to continue the seal (Docs. 265 & 268) will be denied, with instructions.

In moving for summary judgment, Defendants take issue, early and often, with Plaintiffs' decision to make little (or no) effort to adduce evidence regarding how, specifically, the Physicians are alleged to have inflated their wRVUs. *See, e.g.*, Doc. 206-1 at pg. 6 of 32

---

[1] Plaintiffs have withdrawn their Motion (Doc. 203) for partial summary judgment, and that will be denied as moot. In light of the rulings herein, moreover, Plaintiffs' Motion (Doc. 223) to strike Defendants' statement of facts likewise will be denied as moot.

("Despite fifteen fact depositions, two third party data subpoenas, nearly 100 document requests, hundreds of requests for admission, and more than two-dozen interrogatories, all yielding hundreds of thousands of pages of produced documents and a decade of claims data, Relators have unearthed no evidence of fraud.").[2]  While, admittedly, this Court likewise took issue with Plaintiffs' failure to plead such facts, the Court of Appeals for the Third Circuit's Opinion teaches that such evidence is not required.  Rather, the Circuit Court indicated that such a showing was only one of five different ways Plaintiffs might establish that the Physicians' compensation "varie[d] with, or [took] into account, the volume or value of referrals."  *See generally* Doc. 116-1 at pgs. 6 and 17 of 33.

> [Plaintiffs] allege five sets of facts that suggest that the [Physicians'] pay
> far exceeded [FMV]:  pay exceeding collections, pay above the 90th percentile,
> extreme Work Units, bonuses above the Medicare reimbursement rate,
> and ["]the settlement[," which the Circuit Court used as shorthand for Plaintiffs'
> then-stated theories of fraudulent wRVU inflation].

*Id.* at pg. 24 of 33.

The undersigned does not read the Opinion as stating or implying that, through discovery, Plaintiffs were required to identify specific instances of fraudulent wRVU inflation. To the contrary, there is zero indication that Plaintiff cannot proceed through summary judgment, and ultimately at trial, on the other four indicia referenced by the Circuit Court. Thus, the questions on summary judgment are, do triable issues of fact remain regarding: (a) FMV; and (b) whether payment in excess of FMV would allow a reasonable inference that Defendants "kn[ew], recklessly disregard[ed], or deliberately ignore[d]" that compensation "varie[d] with, or [took] into account, the volume or value of referrals."  *Id.* at pg. 17 of 33.

---

[2]  For the sake of consistency, all record citations are made by reference to the ECF banner numbers, irrespective of the documents' internal pagination.

Given the theories permitted, and in all candor, it is unsurprising that Plaintiffs survive summary judgment. Plaintiffs have elicited enough testimony and documentation in support of the "common sense," "obvious"[3] conclusion: "Compensation for personal services above [FMV] can suggest that the compensation is really for referrals." *Id.* at pg. 18 of 33.

The evidence summarized in Plaintiffs' opposition brief, read in a light most favorable to them, is sufficient to present a jury issue regarding *scienter*. *See* Doc. 236 at pgs. 14-17 of 34 (citing and quoting record evidence). Plaintiff also has retained an expert, Kathy McNamara, who opines regarding FMV. So too have Defendants, and the Court rejects the parties' mutual attacks on their competing expert's methodologies. These points are for a jury to decide. *See* Sun Pharma Global Fze v. Lupin Ltd., 2021 WL 856886, *7 (D. N.J. Mar. 8, 2021) (citing and quoting numerous legal principles applicable under these circumstances); *see also generally* Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1216 (3d Cir. 1993) ("in a battle of the experts, the factfinder decide[s] the victor") (alteration in original, citation to quoted source omitted).

To be sure, Defendants and their counsel have fought the good fight, and the Court has considered their varied, numerous arguments as to why no jury issues present. As for where the case stands, after discovery, it seems fair to say that not much has been done to "move the ball down the field." But, in light of the Circuit Court's teachings, the undersigned cannot say it is not enough. Although Defendants have tried to insulate, or explain away, Plaintiffs' strands of evidence regarding *scienter*, the collective weight of the "full wins" necessary for Defendants to prevail on summary judgment proves too much. And, while Defendants argue that "no court has

---

[3] *See generally id.* at pgs. 5, 18, 19 and 32 of 33.

allowed a relator to rely exclusively on the opinion of an expert witness" regarding FMV,[4] the implications of the Circuit Court's Opinion run opposite (*i.e.*, an issue of material fact regarding obvious, common sense inferences of *scienter*, plus competent expert testimony regarding FMV, is enough).  Summary judgment must be denied.

These things being said, the Court notes that Defendants have *not* moved for partial summary judgment, regarding certain of the Physicians, or certain of the Physician work-years, for which compensation is not opined to have exceeded FMV.  *See* Doc. 242-1 at pg. 6 of 50 (McNamara report, asserting that compensation exceeded FMV for Drs. Abla, Bejjani, Horowitz, Kassam, Spiro, El-Kadi and Maroon, most of which for less than all years during the relevant timeframe).

Defendants' briefing highlights that Plaintiffs' Stark Act proofs must extend to "each named neurosurgeon, for each year of their employment during the relevant time period." *See* Doc. 206-1 at pg. 18 of 32.  Although the point does not establish that summary judgment, on the whole, is warranted − it is not incorrect, and it may well inform the universe of putative recovery.  Defendants, understandably, have not sought to so-parse Plaintiffs' claims on summary judgment.  To be clear, though, the Court has not passed on the issue.[5]

The only other resolution presently required is the parties' requests to extend the seal regarding summary judgment papers.  Plaintiffs' requests present an easy case, because their

---

[4]  *See* Doc. 206-1 at pg. 23 of 32.

[5]  In the Circuit Court's decision, discussions regarding FMV appear in rarified air.  Although the matter presently is not before the Court, whether McNamara's opinions warrant or allow extrapolation of putative liability beyond her select FMV determinations appears an open question.  At the very least, Defendants can be expected to argue to the jury that liability, if any, is appropriately limited.  *See* Doc. 206-1 at pg. 23 of 32 (emphasizing McNamara's opinion that "the aggregate compensation paid to [only] seven of the thirteen neurosurgeons exceeded [FMV] in some (but not all) years").

redactions are narrowly tailored to shield the disclosure of protected health or personal identifying information of patients.  The former implicate HIPAA, and the latter are covered under Local Rule 5.2.D.  Having reviewed each identified redaction, the Court finds Plaintiffs' positions supported, and a continuance of the seal does not cause concerns under *Avandia*.

Defendants' requests are the opposite.  They have redacted large swaths of content, based on broad categories, under expansive readings of the law.  While the Court, on some level, understands Defendants' inclination to shield, the lines they have drawn cannot stand.

The first category is "Compensation Amounts, Structure, and Employment Terms," under which Defendants have redacted compensation figures; wRVU performances and formulae; and "Other Proprietary Contract Provisions," including "non-compete clauses and administrative duty hours."  Doc. 265-1 at pgs. 6 through 12 of 21.  Defendants characterize such content as "highly confidential business information," the revelation of which may allow competitors to poach physician talent.  *See id.*

The Court rejects Defendants' suggestion that this information is akin to trade secrets, or is sufficiently similar to warrant like treatment.  *See* Reinig v. RBS Citizens, N.A., 2021 WL 6098290, *2 (W.D. Pa. Dec. 22, 2021) (rejecting similar claims regarding "proprietary and sensitive business information[,] including compensation plans [and] confidential policies"; "[a] showing that business information is merely confidential − without more − is insufficient to overcome the presumption in favor of access," and "[c]onfidential business information is not entitled to the same level of protection . . . as trade secret information") (citations to quoted and other sources omitted).

The Court believes its conclusions to be obvious, and it will not belabor them: Defendants have not even begun to approach the rigorous standards in *Avandia*, in terms of

subject matter, specificity and clearly defined and serious injury.  Furthermore, the Court cannot imagine how matters so central to the nature and purpose of this litigation[6] should, in such breathtaking swaths, be shielded.

Defendants fail *Avandia's* right of access standards, and, although Defendants also purport to satisfy the First Amendment inquiry, *see* Doc. 265-1 at pg. 4 of 21, n.3, that claim only serves to highlight the untenability of their position.  It is inconceivable that the case properly may proceed to a "secret trial," with the public being ushered out of the gallery every time a document or witness references "Compensation Amounts, Structure and Employment Terms."  All sealings regarding these matters will be lifted.

The next category is "Finances of Defendants and Their Affiliates."  *Id.* at pgs. 12-13 of 21.  The same reasoning applies, and the analyses above are incorporated by reference.  Like compensation information, Defendants' finances, including "revenue figures [and] overhead costs," are central to the claims and defenses in this case.  *See, e.g.*, Doc. 116-1 at pg. 24 of 33 (Plaintiffs may show that the Physicians' compensation exceeded FMV based on "pay exceeding collections"); Doc. 228-2 at pg. 41 of 75 (O'Brien report, indicating that, in formulating opinions, he "reviewed information related to the financial performance of the UPP, Tri-State, and CMI physician groups").  Defendants' assertion that the information is "irrelevant to the public's understanding of this case," Doc. 265-1 at pg. 13 of 21, challenges the "straight face" test.  The Court's disinclination to proceed by "secret trial," referenced above, applies here as well.

---

[6] *I.e.*, the adjudication of whether physician *compensation* exceeded FMV, by way of inflated *wRVUs*, in violation of the Stark Act.

The Court now skips to the category of "Peer Review Information." Doc. 265-1 at pgs. 16 through 18 of 21. When formulating their seal requests, Defendants did not have the benefit of the undersigned's decision in U.S. *ex rel.* Doe v. Luketich, 2022 WL 672258 (W.D. Pa. Mar. 7, 2022). The analyses therein apply with equal force, and the seal on this category will be lifted.

Turning to "Data Licensed from Third Parties," Doc. 265-1 at pgs. 18 through 19 of 21, Plaintiffs highlight that similar information routinely has been filed without redaction in other cases. *See* Doc. 269 at pg. 7 of 24 (citing cases). Confidentiality concerns, if any, are those of the third-party sources, moreover, and Defendants' briefing makes no reference to expressions of discontent (assuming Defendants would have standing to raise them). While Defendants may have legitimate concerns regarding potential breaches of their licensing agreements, the Court's ordering of the revelations should quell their unease.

The final category, regarding "Protected Health Information, Personally Identifying Information and Other Sensitive Personal Information," Doc. 265-1 at pgs. 13 through 16 of 21, is the only one to gain some traction. The Court takes no issue with continuing protections consistent with HIPAA, and the Local Rules. Notably, however, the Local Rules do not support redacting addresses from *curricula vitae*. *See* L. Civ. R. 5.2.D (home addresses are redacted only in criminal cases). Professional qualification documents, by definition, are not intended to be confidential; and individuals' home addresses commonly are accessible through public record.

Defendants' final subcategory, "Other Sensitive Personal Information," has not been shown to satisfy the right of access standards. Defendants seek protection of information in the Physicians' employment contracts "regarding approved outside activities, − *i.e.*, activities they engage in outside of their employment, and therefore irrelevant to the case"; as well as

"individuals taking short term disability or experiencing a [personal] health issue." *Id.* at pg. 16 of 21.

With respect to the Physicians' other activities, those would be publicly knowable by virtue of their participation in the same. A comparison of the redacted and sealed documents, moreover, reveals that Defendants' applications quickly backslide into their "compensation information" arguments, already rejected. They also present significant line drawing issues. In any event, Defendants have failed to meet their burdens.

Turning to incidents of illness and disability, the Court has reviewed the sealings, and the references are so vague that they nowhere approach the HIPAA concerns endorsed above. Again, Defendants' arguments are unconvincing, and the seal will be lifted.

Consistent with the foregoing, it is the Court's intention to unseal all but the following (summary judgment only) documents.[7] The summary below also contains explanatory notes regarding some of the unsealings.

| Redact. No. | Sealed No. | Explanation |
| --- | --- | --- |
| 197-2 | N/A | Patient identifiers/information, the redaction is accepted. |
| 201-02 | 220-04 | Patient identifiers/information, **Doc. 220-04 will remain sealed**. |
| 207-03 thru 207-16 | 205 | Sealing issues moot, Plaintiffs withdrew their Mot. for Part. SJ. |

---

[7] Defendants should be aware that their seal requests have required the Court to compare nearly one hundred sets of redacted documents, against one hundred sets of sealed documents, to discern what has been proposed. This is *after* the Court's having found all but a few of the proposed sealing categories unsustainable. What transpired in this case cannot be what the *Avandia* Court envisioned. Should such widespread requests be made in the future, counsel should propose the appointment of a special master, at the sealing-requestors' expense.

| | | |
|---|---|---|
| 208-09 | 215-09 | **Doc. 215-09 will be unsealed**, but **Defendants may redact** the personal identifier (DOB), pursuant to the LR (in which case, 215-09 will remain sealed). |
| 208-23 | 215-23 | **Doc. 215-23 will be unsealed**, although the Court notes that the redactions in the sealed and unsealed filings appear identical. |
| 210-03 | 216-03 | Redaction of patient identifiers/information is appropriate, and **Doc. 216-03 will remain sealed**. **Defendants are, however, required to file updated redactions**, eliminating those categories that have been rejected. |
| 210-26 | 216-26 | Redaction of patient identifiers/information is appropriate, and **Doc. 216-26 will remain sealed**. **Defendants are, however, required to file updated redactions**, eliminating those categories that have been rejected. |
| 212-14 | 218-14 | **Doc. 218-14 will remain sealed**, based on personal identifiers. Doc. 212-14 contains appropriate redactions. |
| 212-30 | 218-30 | **Doc. 218-30 will remain sealed**, based on HIPAA. |
| 212-33 | 218-33 | Redaction of patient identifiers/information is appropriate, and **Doc. 218-33 will remain sealed**. **Defendants are, however, required to file updated redactions**, eliminating those categories that have been rejected. |
| 212-47 | 218-47 | **Doc. 218-47 will remain sealed**, based on patient identifiers/information. Doc. 212-47 contains appropriate redactions. |
| 212-75 | 218-75 | **Doc. 218-75 will remain sealed**, based on patient identifiers/information. Doc. 212-75 contains appropriate redactions. |
| 226-03 | 227-03 | **Doc. 227-03 will remain sealed**, based on patient identifiers/information. Doc. 226-03 contains appropriate redactions. |

| | | |
|---|---|---|
| 236-11 | 239-11 | **Doc. 239-11 will remain sealed**, based on patient identifiers/ information.  Doc. 236-11 contains appropriate redactions. |
| 237-31 | 240-31 | Redaction of patient identifiers/information is appropriate, and **Doc. 240-31 will remain sealed**.  **Defendants are, however, required to file updated redactions**, eliminating those categories that have been rejected. |
| 238-23 | 241-23 | **Doc. 241-23 will remain sealed**, based on HIPAA. |
| 238-24 | 241-24 | **Doc. 241-24 will remain sealed**, based on HIPAA. |
| 238-25 | 241-25 | **Doc. 241-25 will remain sealed**, based on HIPAA. |
| 238-28 | 241-28 | **Doc. 241-28 will remain sealed**, based on HIPAA. |
| 238-40 | 241-40 | **Doc. 241-40 will remain sealed**, based on HIPAA. |
| 238-41 | 241-41 | **Doc. 241-41 will remain sealed**, based on HIPAA. |
| 238-42 | 241-42 | **Doc. 241-42 will remain sealed**, based on HIPAA. |
| 238-46 | 241-46 | **Doc. 241-46 will remain sealed**, based on HIPAA. |
| 238-47 | 241-47 | **Doc. 241-47 will remain sealed**, based on HIPAA. |
| 246 | 236-14 | **Doc. 236-14 will be unsealed.**  There are redactions in both the sealed and the unsealed versions, and, if personal identifiers are contained therein, they cannot be seen. |
| 249 | 236-18 | **Doc. 236-18 will be unsealed.**  There are redactions in both the sealed and the unsealed versions, and, if personal identifiers are contained therein, they cannot be seen. |

| | | |
|---|---|---|
| 256 | 238-28 | **Doc. 238-28 will be unsealed.**  Both the sealed and unsealed versions are redacted identically. |
| 257 | 236-01 | **Doc. 236-01 will be unsealed.**  There are redactions in both the sealed and the unsealed versions, and, if personal identifiers are contained therein, they cannot be seen. |

By **July 8, 2022**, Defendants shall file the updated redactions identified above.  Also by that date, any party may file a notice on the docket identifying sealable information, consistent with the parameters above, that the Court may have overlooked.  Once such submissions have been made, the Court promptly will unseal all summary judgment papers except those identified as containing appropriately sealed materials.

In addition, the Court will schedule a video Status Conference, to discuss next steps in this case.  The parties have presented their expert/Daubert issues only as relates to their arguments on summary judgment.  Deadlines regarding expert admissibility, both liability and damages, will need to be set (along with any other matters to be resolved *in limine*).[8]  Potential trial dates also will be discussed.  Finally, if the parties agree that additional ADR/mediation efforts are appropriate, the Court is amenable to hearing proposals.

Consistent with the foregoing, the Court hereby enters the following:

---

[8] The Court presently has deferred ruling on the parties' expert challenges, to the extent that they have no impact on summary judgment.  The Motions have been denied, without prejudice to renewal.  In deciding whether to renew the motions, counsel are urged to exercise discretion, and not reinstitute challenges that, based on the Court's present rulings, appear likely to fail. *See generally* discussion *supra* (holding that differences of opinion regarding methodology, between competing experts, present issues for the jury).

## II.  ORDER

Defendants' Motion (**Doc. 206**) for summary judgment is **DENIED**.  Plaintiffs' Motion (**Doc. 203**) for partial summary judgment, and to strike Defendants' statement of facts (**Doc. 223**), are **DENIED AS MOOT**.  The Motions (*see* **Docs. 198, 209 & 219**) to strike the opinions of experts McNamara and O'Brien regarding FMV are **DENIED**, and the remainder of the McNamara and O'Brien Motions are **DENIED WITHOUT PREJUDICE**.  The Motions (**Docs. 193, 194, 196, 200 & 213**) to strike the other experts are **DENIED WITHOUT PREJUDICE**.  The Motion (**Doc. 266**) to continue the seal regarding Plaintiffs' materials is **GRANTED**.  The Motions (**Docs. 265 & 268**) to continue the seal regarding Defendants' materials are **DENIED**, except to the extent described above.

By **July 8, 2022**, Defendants shall file updated redactions.  Also by that date, any party may file a notice on the docket identifying sealable information, consistent with the parameters herein, that the Court has not already referenced.

**A Status Conference, BY VIDEO, is scheduled for July 13, 2022, at 1:45 p.m.** Prior to the Conference, counsel will receive via email a Video Conference Invitation link.  In advance of the Conference, all participants must test their internet connection speed to ensure that it is at least 3 Mbps, and also test their ability to run the videoconferencing software using the link provided.  Such testing must be done no later than 48 hours in advance of the Conference, and should any participant experience insurmountable technical difficulties, the responsible attorney(s) must promptly notify the Court and all other counsel of record.  Should non-compliance with the testing protocol result in the Conference not proceeding as scheduled, the responsible party may be summarily assessed the costs and attorney's fees of those parties who were prepared to proceed.

IT IS SO ORDERED.

June 29, 2022                                s/Cathy Bissoon
                                             Cathy Bissoon
                                             United States District Judge

cc (via ECF email notification):

All Counsel of Record